UNITED STATES OF AMERICA,               )
                                        )
                Plaintiff,              )
                                        )
        v.                              )       No. 4:05 CR 667 SNL
                                        )                        DDN
ROBERT D. WACHTER,                      )
AMERICAN HEALTHCARE MANAGEMENT,         )
INC.,                                   )
CLAYWEST HOUSE HEALTHCARE, LLC,         )
OAK FOREST NORTH, LLC, and              )
LUTHERAN HEALTHCARE, LLC,               )
                                        )
                Defendants.             )

**ORDER AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

        This action is before the Court upon the pretrial motions of the
parties which were referred to the undersigned United States Magistrate
Judge pursuant to 28 U.S.C. § 636(b).  An evidentiary hearing was held
June 19, 2006.

        On November 17, 2005, the instant six-count federal grand jury
indictment was filed against defendants Robert D. Wachter and four
organizations.  Count 1 of the indictment alleges that all defendants
conspired to make false statements in connection with payments for
health care, in violation of 18 U.S.C. § 1035; to defraud a health care
benefit program, in violation of 18 U.S.C. § 1347; to make false
statements regarding health care benefits, in violation of 42 U.S.C. §
1320a-7b(a)(2); and to conceal or fail to disclose events affecting the
right to health care benefits, in violation of 42 U.S.C. § 1320a-
7b(a)(3).  In Counts II through VI, all five defendants are charged with
making false statements and records regarding health care benefits for
five specific persons, in violation of 18 U.S.C. §§ 2 and 1035.


**I.  Pretrial disclosure of evidence.**

        Defendant Robert D. Wachter (Wachter) has moved to strike
surplusage (Doc. 45), and to compel compliance with a court order (Docs.
66 and 80).

Defendants American Healthcare Management, Inc. (AHM), Claywest House Healthcare, LLC, Oak Forest North, LLC, and Lutheran Health Care, LLC (organizational defendants) have moved for leave to file additional motions (Doc. 52), to compel compliance with court order (Doc. 69), to quash government's subpoena (Doc. 72), and to strike (Doc. 81).[1]

## A. Motions to strike

Defendants moved to strike surplusage from the indictment. (Doc. 45.) Defendants also moved to strike pages 13 through 15 of the government's response and Attachment 1 of that response because that material is immaterial, inflammatory, and prejudicial. (Doc. 81.)

## I. Strike from indictment

Federal Rule of Criminal Procedure 7(d) provides "[u]pon the defendant's motion, the court may strike surplusage from the indictment or information." Fed. R. Crim. P. 7(d). "A motion to strike surplusage from an indictment . . . should be granted only where it is clear that the allegations contained therein are not relevant to the charge made or contain inflammatory and prejudicial matter." United States v. Michel-Galaviz, 415 F.3d 946, 948 (8th Cir. 2005). Federal Rule of Evidence 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401.

Defendants argue that paragraphs 53, 56, 61b, 61c, 71, 81, 86, 99, 110, and 119 should be stricken because the information contained in them is not relevant to the charges and contains merely prejudicial or inflammatory matter. They also argue that any information about residents R.M., C.B., D.M., or L.A. should be stricken because those

---

[1]Defendants AHM, Claywest, Oak Forest North, and Lutheran Health moved to join defendant Wachter's motion to strike surplusage. (Doc. 62.) Defendant Wachter moved to join the motions of AHM, Claywest, Oak Forest North, and Lutheran Health to quash and to strike. (Doc. 74, 88.) The court sustained these motions. (Docs. 70, 75, 93.)

individuals are not listed in the counts as specific persons about which false statements were made.

The indictment alleges in Count I that defendants conspired to make false statements to defraud a health care benefit program. Counts II through VI allege that the defendants did make false statements regarding healthcare benefits. Therefore, any facts that tend to establish a false or fraudulent claim, false statement, or action taken in furtherance of the conspiracy is relevant and should not be stricken.

Paragraph 53 of the indictment should not be stricken. It details the story of Resident R.M, who eloped, or left without permission, from Claywest on May 24, 1998. R.M. walked 0.8 miles, crossed a six-lane intersection and was found at a grocery store. Paragraph 53 alleges that only 14 nurses were on staff for the 141 residents, and that on May 30, 1998, Claywest was cited with deficiencies, including insufficient staffing, and was cited again on June 12, 1998. Claywest was also cited by the state authorities with serious problems with ants and mice on June 12, 1998.

Paragraph 53 alleges facts that are relevant to the insufficient staffing that led to the inadequate care on which the Medicare and Medicaid claims are allegedly based. It alleges that few staff members were working the day a resident eloped, that no one knew where the resident was, and that shortly thereafter, the facility was cited for staff shortages, among other citations that would, taken together, support the government's theory that the services were worthless. That these services were allegedly worthless supports the element that defendants provided false statements about the quality of care.

Paragraph 56 alleges: "On or about June 30, 1998, the State sought to revoke Claywest's license. Defendants Wachter, Claywest, and AHM opposed the revocation and Claywest was permitted to operate pursuant to a stay order under specific conditions." (Doc. 2 at 17.) These allegations are relevant to both the relative seriousness of the alleged substandard care given to the patients at Claywest, as well as the knowledge of Wachter about the care given to the patients at Claywest, and are relevant to whether defendants made false statements about the care given.

Paragraphs 61b and 61c allege:

b.     Between 1997 and 1999, Resident M.W. suffered numerous injuries including a hand fracture and skin tears and bruises on her legs, arms, and hands.

c.     In or about February 1999, Resident M.W. suffered from a dislocated shoulder and pressure sores on her heels.

(Doc. 2 at 18.)  These paragraphs are relevant.  Each alleges facts that, if true, are relevant to the standard of care being provided to residents at the facilities, Claywest in particular.  Taken in context with the rest of paragraph 61, which details allegations about how these sores were not treated, and how this resident was ultimatley removed from the facility, this paragraph alleges facts relevant to whether this resident's care was worthless, and whether defendants provided false statements about this service.

Paragraph 71 alleges:  "On or about April 13, 1999, Defendant Wachter in an e-mail declared himself the 'dictator' of the company. He told his facility administrators to send a card, instead of more expensive flowers, when a resident died.  He stated that the resident's family would appreciate the card more."  (Doc. 2 at 20.)  This paragraph should not be stricken, because it is relevant to Wachter's role in the companies, and his management over the actions of the facilities.

Paragraph 81 alleges that Resident C.B. was changed to a pureed diet because he had trouble swallowing.  On June 17, 1999, he allegedly aspirated at approximately 1:00 p.m., and an x-ray was ordered, but the records did not indicate whether the x-ray or other intervention was ever performed.  C.B. died while his wife was feeding him at 6:00 p.m. on June 17.  The indictment alleges that no registered nurse was on duty from 12:00 a.m. to 6:00 a.m., or from 5:00 p.m. until 11:00 p.m., and that there was no plan of care to prevent aspiration, to stop feedings by mouth, or to monitor the resident.  (Doc. 2 at 23.)  This paragraph is relevant to the charges that the care provided was so inadequate as to be considered worthless, and whether defendants' statements or representations about this care were false.

Paragraph 86 of the indictment contains allegations about V.B., who resided at Claywest in July 1999.  Her hip had been surgically pinned

and was unstable, but she was neither terminally ill nor demented.  On July 29, 1999, a nurse, after performing a pulse oximetry reading, indicated that V.B. should be transported to the hospital for an acute myocardial infarction.  V.B. was hospitalized on July 29, 1999, and died on August 23, 1999.

Paragraph 86 is relevant to the charges.  Defendants argue there is no way of telling by reading the indictment how this patient died. While this may be true, the government need not expressly state with clarity all of its evidence in the indictment.  <u>See</u> Fed. R. Crim. P. 7(c)(1) (indictment to contain the "essential" elements of the offense alleged).  This paragraph is another factual allegation of resident health problems at the facilities, which is relevant to the quality of the services provided.

Paragraph 99 alleges, in relevant part, that Charles B. Kaiser, defendant AHM's president and in-house counsel, "stated that asking the government to pay for substandard care was Medicare fraud" and that "Mr. Wachter and Mr. Kaiser are going to jail." (Doc. 2 at 27-28.)  This is relevant to Wachter's knowledge of his alleged subsequent wrongdoing and conspiracy, and his knowledge that the care given was substandard and allegedly worthless.

Paragraph 110 alleges details about Resident L.A., who had a pressure sore at the Stage I level, was bed or chair bound, had an incontinent bladder and bowel, and had a history of dehydration and poor nutrition.  The indictment alleges that in the afternoon on April 17, 2001, L.A. lay on a regular mattress and in his urine, and was not provided a pressure-relieving mattress nor promptly cleansed after urinating.  Later in the evening of April 17, L.A. lay in bed soaked with urine.  His wound care order stated that both heels were to be wrapped with cling gauze after Lanaseptic ointment was applied every shift, or three times a day.  On April 18, 2001, a staff member noted that the dressings were the same as applied the day before, and the resident had multiple pressure sores at the Stage II level.  Treatment records indicated that facility staff failed to treat the pressure sores 19 times between April 7 through April 18, 2001.  This paragraph is

relevant to the standard of care that patients, particularly L.A., were receiving, and should not be stricken.

Paragraph 119 alleges:

119. During times relevant to this indictment, Defendant AHM and the nursing facilities managed by AHM entered into a number of settlements of civil lawsuits brought by relatives of residents of AHM-managed facilities. The civil lawsuits alleged that residents had died or suffered serious injury as the result of the inadequate care provided by the facilities.

(Doc. 2 at 42.)

The information contained in paragraph 119 is relevant to defendants' knowledge about the alleged "worthless" care provided by defendants. That they had civil suits brought against them and settled them is relevant to whether or not the defendants were aware, at the least, of complaints about the standard of care. Defendants argue that it should be stricken because Federal Rule of Evidence 408 prohibits admitting evidence of offers to compromise. However, "[t]he indictment is not evidence of any kind against the defendant." United States v. Figueroa, 900 F.2d 1211, 1218 (8th Cir. 1990). It should not be stricken.

Defendants argue that any information about residents R.M., C.B., D.M., and L.A. should be stricken. They are residents described in the introductory portion of the indictment who are not alleged in the overt acts of Count 1 or included in false statements Counts 2-6. With regard to the Count 1 conspiracy, the government can offer evidence of other overt acts not alleged in the indictment. E.g., Fed. R. Evid. 404(b). "Where the indictment fairly specifies the offense charged and notifies the defendant of the particulars, the defendant has knowledge that other overt acts underlying the conspiracy might be pleaded at trial." United States v. Lewis, 759 F.2d 1316, 1344 (8th Cir. 1985); see also United States v. Coleman, 349 F.3d 1077, 1088 (8th Cir. 2003), cert. denied, 541 U.S. 1055, 1080 (2004). The government is not limited to offering evidence about only those residents specifically listed in the counts. The defendants, furthermore, have been put on notice by the grand jury of the information the government has regarding the other residents and which may be offered at trial.

### ii. Strike responsive brief

Defendants have also moved to strike pages 13 through 15 of the government's response (Doc. 78), arguing that the material in those pages and Attachment 1 concerns a patient who is not mentioned in the indictment and is only discussed to inflame the court against defendants. (Doc. 81.) The government argues that it has provided the defendants with all the names of the residents about whom it intends to offer evidence at trial, including that resident, and that there is no legal basis for striking this information.

The court concludes that there is no basis for striking those pages and attachments from the government's brief. There is no reason a jury would see these pages. The motion should be denied.

### B. Motion to quash

Defendants AHM, Claywest, Oak Forest, and Lutheran Healthcare have moved to quash the government's May 9, 2006 subpoena issued to Cathedral Rock of St. Charles. (Doc. 72.) They also seek a protective order barring the government from any future administrative subpoenas.

On May 9, 2006, Dorothy L. McMurtry, Assistant United States Attorney who is the signatory on the six-count indictment, signed and issued a subpoena duces tecum to the Custodian of Records of the Cathedral Rock of St. Charles, Missouri, d/b/a Blanchette Place Care Center. The subpoena commanded the production of certain documents at the office of the United States Attorney in St. Louis on May 22, 2006. The face of the subpoena stated that the materials sought

> are necessary in the performance of the responsibility of the
> U.S. Department of Justice to investigate federal health care
> offenses, defined in 18 U.S.C. § 24(a) to mean violation of,
> or conspiracies to violate: 18 U.S.C. §§ 669, 1035, 1347,
> or 1518; and 18 U.S.C. §§ 287, 371, 666, 1001, 1027, 1341,
> 1343, or 1954 if the violation or conspiracy relates to a
> health care benefit program (defined in 18 U.S.C. § 24(b).

(Doc. 72 Ex. A.)

Defendant Wachter argues that the subpoena should be quashed, because it was issued unlawfully. Defendants incorporate by reference the arguments of defendant Wachter in his motion to quash dated February 27, 2006 (Doc. 23), which this court denied (Doc. 37). In summary,

Wachter had previously argued that it is unlawful for the government to use the administrative subpoena to continue its investigation of the crimes charged in the pending indictment.  By doing this, defendant Wachter argues, the government is avoiding the requirements of Federal Rule of Criminal Procedure 17 and the requirement of the Right to Privacy Act, 12 U.S.C. § 3405, that the subpoena state with reasonable specificity the nature of the law enforcement inquiry.  (Doc. 23.)

"Generally, absent violation of the Constitution or other provision of law, and where authorized by law, the government may use an administrative subpoena, issued to third parties, to continue investigating pending charges.  United States v. Phibbs, 999 F.2d 1053 (6th Cir. 1993); United States v. Harrington, 761 F.2d 1482 (11th Cir. 1985); United States v. Daniels, 2000 WL 764951 (D. Kan. 2000)."  (Doc. 37 at 3.)  To be reasonable under the Fourth Amendment, an investigative subpoena

> must be (1) authorized for a legitimate governmental purpose;
> (2) limited in scope to reasonably relate to and further its
> purpose; (3) sufficiently specific so that a lack of
> specificity does not render compliance unreasonably
> burdensome; and (4) not overly broad for the purposes of the
> inquiry as to be oppressive . . . .

In re Subpoena Duces Tecum, 228 F.3d 341, 349 (4th Cir. 2000).

Here, there is no indication that there is any violation of the Constitution or other provision of law, and defendant Wachter does not argue otherwise.  It is limited in scope, is for a legitimate purpose, and specific.  For the same reasons this court denied Wachter's previous motion to quash, it denies this motion to quash.[2]  No defendant has presented any new argument why this third party administrative subpoena differs from the other so that it should be quashed.

The motion will be denied.

### C.  Motion to compel compliance with a court order and to file additional motions

---

[2]For a thorough discussion of the previous motion and this issue, see Doc. 37.

Defendants' motion to compel compliance with a court order (Docs. 69, 80) is denied.  The court order required that the government file its motion for pretrial determination of admissibility of evidence by May 1, 2006, which the government did not do.  Counsel for the government stated at the hearing that it did not have any arguably suppressible evidence to offer at trial, and counsel for the defendants stated that they did not plan to file a motion to suppress.  Therefore, this motion is denied.  Defendants' motions for leave to file additional motions will be sustained in that any such additional motion shall be accompanied by a showing of good cause why any such additional motion was not filed within the deadlines set by the court.

## II.  Motion to dismiss

Defendants move to dismiss the indictment (Doc. 48),[3] arguing generally that the indictment alleges no crime, because it is not illegal to submit payments for services rendered even if there are shortage of staff or quality of care issues.

This motion to dismiss challenges the indictment as legally insufficient on its face.  To be legally sufficient on its face, the indictment must contain all the essential elements of each offense charged, it must fairly inform each defendant of the charges against which he and it must defend, and it must allege sufficient information to allow each defendant to plead a conviction or an acquittal as a bar to a future prosecution.  U.S. Const. amends. V and VI; Fed. R. Crim. P. 7(c); Hamling v. United States, 418 U.S. 87, 117 (1974); United States v. White, 241 F.3d 1015, 1021 (8th Cir. 2001).  "An indictment should not be read in a hyper technical fashion and should be 'deemed sufficient unless no reasonable construction can be said to charge the offense.'"  United States v. O'Hagan, 139 F.3d 641, 651 (8th Cir. 1998) (quoting United States v. Morris, 18 F.3d 562, 568 (8th Cir. 1994)).

Initially, the court must determine the essential elements of each offense charged.  The indictment alleges six counts.  Count 1 alleges

---

[3]Defendant Wachter filed the motion (Doc. 48), in which the remaining defendants joined.  (Docs. 62, 70.)

that defendants Wachter, American Healthcare Management, Claywest House Healthcare, Oak Forest North, and Lutheran Healthcare violated 18 U.S.C. §§ 371[4] and 2 by conspiring to violate 18 U.S.C. § 1035,[5] 18 U.S.C. § 1347,[6] 42 U.S.C. § 1320a-7b(a)(2),[7] and 42 U.S.C. § 1320a-7b(a)(3)[8].

---

[4]Section 371 provides in relevant part:

If two or more persons conspire either to commit any offense against the United States . . . and one or more of such persons do any act to effect the object of the conspiracy, each shall be [punished].

18 U.S.C. § 371.

[5]Section 1035 provides in relevant part:

(a)  Whoever, in any matter involving a health care benefit program, knowingly and willfully--
                    *  *  *
    (2)  . . . makes or uses any materially false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry, in connection with the delivery of or payment for health care benefits, items, or services, shall be [punished].

See 18 U.S.C. § 1035(a)(1).

[6]Section 1347 provides in relevant part:

Whoever knowingly and willfully executes . . . a scheme or artifice--

    (1)  to defraud any health care benefit program; or

    (2)  to obtain, by means of false or fraudulent pretenses, representations, or promises, any of the money or property owned by, or under the custody or control of, any health care benefit program,

in connection with the delivery of or payment for health care benefits, items, or services, shall be [punished].

See 18 U.S.C. § 1347.

[7]Section 1320a-7b(a)(2) and (a)(3) provides in relevant part:

Whoever--

(2)  at any time knowingly and willfully makes or causes to be made any false statement or representation of a material

- 10 -

Counts 2 through 6 of the indictment allege the making of false statements relating to health care matters in violation of 18 U.S.C. § 1035.

The essential elements of the Count 1 § 371 conspiracy crime are alleged in that count. They are that defendants (1) agreed with another (2) to commit crimes against the United States, and (3) at least one overt act was committed in furtherance of the agreement. See 18 U.S.C. § 371; United States v. Falcone, 311 U.S. 205, 210 (1940); United States v. Sdoulam, 398 F.3d 981, 991 (8th Cir. 2005). The indictment identifies the federal criminal laws that are the subjects of the conspiracy. Tramp v. United States, 978 F.2d 1055, 1055 (8th Cir. 1992). The indictment also describes the nature and purpose of the conspiracy, and its manner and means. Count 1 also alleges 16 overt acts in furtherance of the conspiracy.

All the essential elements of the § 1035 false statements crimes are alleged in each of Counts 2 through 6. They are that defendants (1) in a matter involving a health care benefit program, (2) knowingly and willfully, (3) made or used any materially false writing or document

---

fact for use in determining rights to such benefit or payment,

(3) having knowledge of the occurrence of any event affecting (A) his initial or continued right to any such benefit or payment, or (B) the initial or continued right to any such benefit or payment of any other individual in whose behalf he has applied for or is receiving such benefit or payment, conceals or fails to disclose such event with an intent fraudulently to secure such benefit or payment either in a greater amount or quantity than is due or when no such benefit or payment is authorized,
                              * * *
shall (i) in the case of such a statement, representation, concealment, failure or conversion by any person in connection with the furnishing (by that person) of items or services for which payment is or may be made under the program, be guilty of a felony and upon conviction [punished] . . . .

See 42 U.S.C. § 1320a-7b(a)(2), (a)(3).

[8]See footnote 7.

entry, (4) knowing the writing or document contained a materially false, fictitious, or fraudulent statement or entry, (5) in connection with the delivery of or payment for health care benefits, items, or services. See 18 U.S.C. § 1035(a)(2). Section 1035 incorporates the definition of "health care benefit program" found in 18 U.S.C. § 24(b).[9] Each count alleges, regarding a different resident, regarding different dates of service, and regarding different dates the statements were submitted, that defendants

> stated and represented that the facilities had provided
> services to the residents named below when the Defendants
> knew, at the time the claim was submitted, that the services
> were so inadequate, deficient, and substandard as to
> constitute worthless services.

(Doc. 2 at 54.)

Defendants argue that the indictment is flawed, because it does not allege any facts that indicate that the alleged misrepresentations were material to the decision of Medicaid and Medicare to pay the claims.

An accepted definition of "material" or "materiality" is as follows:

> A fact is "material" if it has a natural tendency to
> influence, or is capable of influencing the decision of the
> institution. Whether a fact is material does not depend on
> whether a course of action [] intended to deceive others
> actually succeeded.

Eighth Circuit Manual of Model Jury Instructions (Criminal) § 6.18.1006A at 255 (Thomson West 2003). Neder v. United States, 527 U.S. 1, 16 (1999); United States v. Adler, 623 F.2d 1287, 1292 n.7 (8th Cir. 1980). The Eighth Circuit in Adler stated:

> we think that a statement is material if it has a tendency
> to induce the government to act, and that this requirement

---

[9]Section 24(b) defines "health care benefit program" as

any public or private plan or contract, affecting commerce,
under which any medical benefit, item, or service is provided
to any individual, and includes any individual or entity who
is providing a medical benefit, item, or service for which
payment may be made under the plan or contract.

18 U.S.C. § 24(b).

> is certainly satisfied by a statement that is adequate to
> induce the agency to make a decision whether or not to pay.
> What makes a statement material is that it is required to put
> the claimant in a position to receive government benefits,
> whether rightfully or wrongfully.

623 F.2d at 1291. Statutes involving fraudulent acts have been interpreted as including an element of materiality, regardless of whether or not the statutes specifically included that element. <u>United States v. Pizano</u>, 421 F.3d 707, 722 (8th Cir. 2005), <u>cert. denied</u>, 126 S.Ct. 1409 (2006); <u>United States v. Cooper</u>, 283 F. Supp. 2d 1215, 1232 (D. Kan. 2003).

Defendants argue that while the indictment contains allegations of false statements, there are no facts these false statements actually affected the decision of Medicaid or Medicare to pay the claims. The indictment alleges what provider claims for reimbursement should contain, <u>e.g.</u>, the identity of the respective patient, the provider's identification number, a description of the service provided, the medical necessity for the service, and a certification that the information provided by the provider is accurate and complete. (Doc. 2 ¶ 17.) The indictment alleges that the providers are prohibited from submitting claims that are "of a quality which fails to meet professionally recognized standards of health care." ( <u>Id.</u> at ¶ 32.) The indictment alleges that the defendants entered into eight plans of corrections regarding adequacy of staffing. (<u>Id.</u> at ¶¶ 46, 51, 57, 83, 95, 96, 97, and 102.) The indictment alleges that the defendants submitted 13 claims for reimbursement, (<u>id.</u> at 153d) and five statements that services were provided when the subject services were worthless. (<u>Id.</u> at ¶ 155.) The indictment alleges that the defendants' representations induced the government through the Medicaid and Medicare programs to pay defendants' claims for reimbursement for services.

Even if compliance with the regulations and statutes governing the facilities are conditions of participation in the Medicare and Medicaid programs and not express conditions of payment, payment of claims is a benefit of participation not available to those that fail to maintain the standards and are not allowed to participate. <u>See</u> 42 U.S.C. §§ 1395f, 1395cc; <u>see also</u> <u>Beverly Health & Rehabilitation Services, Inc.</u>

v. Thompson, 223 F. Supp. 2d 73, 79 (D.C. Cir. 2002) (substandard facilities can be excluded from program).  To be reimbursed by Medicare or Medicaid, the defendants were required to become a "provider" in the program and enter into a provider agreement.  42 U.S.C. § 395cc.  If excluded from the program for substandard facilities, the facilities would not be entitled to receive reimbursement from Medicare and Medicaid.  See Beverly Health, 223 F. Supp. 2d at 79.  The indictment alleges that the provider agreement entered into by defendants, signed by Wachter,  provided that they would abide by all federal health care regulations.  (Doc. 2 at 10-11.)

Further,  the indictment alleges more than mere minor deviations from the regulations.  This is not, as defendants argue, a criminalization of only minor staff shortages and deviations from accepted standards of care.  Such an argument should await the presentation of evidence at trial.  The indictment alleges facts indicating that patients died or eloped from their facilities; the indictment alleges many factual circumstances of neglect and abuse allegedly caused by staff shortages that were mandated by defendants pursuant to a 40 percent formula for staffing. [10]

To comply with the definition of and requirement of materiality, it is unnecessary for the indictment to allege, or the government to prove, although the government's evidence might prove, that the government programs actually relied on the defendants' false representations.  Pizano, 421 F.3d at 722.  The indictment sufficiently alleges facts that, if true, would satisfy the materiality requirement, that the representations were relevant to the decisions to pay the defendants' claims for reimbursement.

The indictment alleges that defendants controlled what information was told to the federal and state agencies concerning patient care.  The indictment alleges that defendant Wachter discouraged employees from reporting suspected abuse.  Employees allegedly were encouraged not to take pictures of pressure sores, and were educated on what to say and

_____

[10]The indictment alleges that defendant Wachter demanded that staffing payroll not exceed 40 percent of the Medicaid per diem.  (Doc. 2 at 17-18.)

not say to state surveyors.  The indictment alleges that Wachter gave false statements about the 40 percent payroll policy while testifying in a civil suit, and there are many factual examples in the indictment of instances where, despite being cited for insufficient staffing and promising to increase staffing, defendants failed to do so.  The alleged facts that Wachter gave false statements about the 40 percent staffing policy, and directed staff to lie about the conditions at the facilities, indicate that his actions were to defraud the Medicaid and Medicare programs.  These alleged attempts to conceal the conditions of the facilities support the materiality element, i.e., that defendant Wachter knew that, if the state and federal agencies were aware of the conditions, they might not pay the claims.

Defendants argue that the indictment should be dismissed because the government is estopped from bringing criminal charges, because, through its regulations and payment of the claims, it misled them into believing their actions were legal.

Entrapment by estoppel is an affirmative defense and "can be used by a defendant who reasonably relied on a statement by the government which misled him into believing that his conduct was legal." United States v. Patient Transfer Service, Inc., 413 F.3d 734, 742 (8th Cir. 2005).  To present a defense of entrapment by estoppel, the defendants have the burden of proving that they were misled by the statements of the government official, and that the reliance on the government official's statements was reasonable.  United States v. Benning, 248 F.3d 772, 775 (8th Cir. 2001); United States v. Austin, 915 F.2d 363, 365-66 (8th Cir. 1990).  "[A] government official must be guilty of affirmative misconduct in order for a defendant to put forth a viable defense of entrapment by estoppel."  Benning, 248 F.3d at 775.

Even if this argument is appropriate in an analysis of whether the indictment is legally sufficient on its face, defendants have not shown that the indictment's allegations establish any affirmative action by the government that would satisfy the defense of estoppel by entrapment. They argue that the relevant statutes do not criminalize submitting claims for compensation for providing substandard care.  But "an incomplete explanation of law cannot support an estoppel-by-entrapment

defense." United States v. Ray, 411 F.3d 900, 904 (8th Cir.) (no affirmative representation when statute did not say that a person who had been convicted of a misdemeanor could possess a firearm), cert. denied, 126 S.Ct. 469 (2005). Like Ray, there is no affirmative representation alleged in the indictment that defendants' conduct was legal; defendants only argue no one ever told them it was illegal. Even if true, this may not be "affirmative misconduct" sufficient to establish the affirmative defense of entrapment by estoppel. Id.

Defendants' third argument is that the indictment contains no facts that the services rendered were "worthless," as the indictment generally alleges, and that applying this doctrine to the statutes would render them void for vagueness.

Defendants argue that the term "worthless service" is vague, and renders the statutes void when applied to them. They argue that defining "worthless" services would prove difficult and gives no person notice as to what constitutes criminal behavior. "The Fifth Amendment guarantees every citizen the right to due process. Stemming from this guarantee is the concept that vague statutes are void." United States v. Washam, 312 F.3d 926, 929 (8th Cir. 2002). "[A] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law." Connally v. Gen. Constr. Co., 269 U.S. 385, 391 (1926). "Void for vagueness simply means that criminal responsibility should not attach where one could not reasonably understand that his contemplated conduct is proscribed." United States v. Nat'l Dairy Products Corp., 372 U.S. 29, 32-33 (1963).

Courts that have applied the "worthless services" doctrine in civil cases have defined "worthless services" as services "so deficient that for all practical purposes it is the equivalent of no performance at all." Mikes v. Straus, 274 F.3d 687, 702 (2nd Cir. 2001). This doctrine has been recognized as a basis for relief under the civil False Claims Act. Id.; United States v. SmithKline Beecham, Inc., 245 F.3d 1048 1053 (9th Cir. 2001); United States v. Covenant Care, Inc., 279 F. Supp. 2d 1212, 1216 (E.D. Cal. 2002); United States v. NHC Health Care

- 16 -

Corp., 163 F. Supp. 2d 1051, 1056 (W.D. Mo. 2001). In the civil context, courts have held that "a worthless services claim asserts that the knowing request of federal reimbursement for a procedure with *no medical value* violates the [False Claims] Act irrespective of any certification." Mikes, 274 F.3d at 702 (emphasis added). Defendants do not assert, and the court cannot find, any cases where this theory was applied to criminal charges.[11]

Applying the "worthless services" doctrine to the criminal statutes the indictment alleges defendants conspired to violate does not render them void for vagueness. "Worthless" is defined as "[t]otally lacking worth; of no use or value." Black's Law Dictionary, (8th ed. 2004). Value means "[t]he significance, desirability, or utility of something." Id. These are common terms whose definition is readily known to ordinary men. Worthless services could include services that were so deficient that they were of no utility to the resident, or were totally undesirable.

Here, "men of common intelligence" could reasonably understand when their conduct could result in worthless services, or services completely lacking value. "Objections to vagueness . . . rest on the lack of notice, and hence may be overcome in any specific case where reasonable persons would know that their conduct is at risk." United States v. Strauss, 999 F.2d 692, 698 (2d. Cir. 1993) (quoting Maynard v.

----

[11]In United States v. Dose, 2005 WL 106493 (N.D. Iowa Jan. 12, 2005), the court considered a nine-count indictment alleging various acts of health care fraud, making false statements, and obstructing a federal audit. The factual basis for the charges in Dose were that the defendants received Medicare and Medicaid funds. During one survey of the facility in May 1999, it was cited for not providing its residents with adequate supervision and assistance. After this survey, a resident fell out of his wheelchair. Id. at *2. In June 1999, the Iowa Department of Inspections requested a list of all residents who had fallen since May 1999. The resident who had fallen was left off the list, and the defendants allegedly concealed the accident.

Dose was not a case where generally worthless services were being alleged. However, false statements about the conditions of the facility, even if only the fall of one resident, were the basis for the charges. See also United States v. Hinman, 2005 WL 958395 (N.D. Iowa Apr. 22, 2005); United States v. Dose, 2005 WL 1806414 (N.D. Iowa July 28, 2005).

- 17 -

Cartwright, 486 U.S. 356, 361 (1988)). "In determining the sufficiency of the notice a statute must of necessity be examined in the light of the conduct [with] which a defendant is charged." United States v. Chandler, 66 F.3d 1460, 1471 (8th Cir. 1995). Here, the indictment alleges that defendants concealed and misrepresented the conditions and care provided. In light of these alleged facts, defendants were on notice that their conduct was at risk for criminal liability.

Defendants argue that it would be difficult for nursing home facilities to distinguish between merely bad services and worthless services. But, "statutes and regulations . . . are not impermissibly vague simply because it may be difficult to determine whether marginal cases fall within their scope." United States v. Sun and Sand Imports, Ltd., 725 F.2d 184, 187 (2nd Cir. 1984).

Further, the fact that the government alleges facts satisfying the scienter requirement, knowledge, mitigates any vagueness that might be present. Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 499 (1982). The indictment alleges that the defendants knew the services were worthless but, nonetheless, submitted claims to Medicaid and Medicare. The indictment alleges many instances where defendant Wachter, who allegedly oversaw the other organizational defendants, attended meetings where the staff shortages and other substandard care issues were discussed. One care facility nearly lost its license due to quality of care issues. The indictment alleges Wachter repeatedly told staff not to report abuse or neglect and to guard what they said to state surveyors. Knowledge of care can be inferred from these facts. Therefore, the statutes defendants allegedly violated are not rendered void for vagueness when applied in this case.

For the above reasons, this indictment is legally sufficient on its face and should not be dismissed.

### III.  Bill of Particulars

Defendant Wachter has moved for a bill of particulars, and the other defendants have joined the motion. (Docs. 60, 62.) Specifically, defendants argue that they are entitled to a bill of particulars which identifies each statement, representation, promise, pretense, document,

and writings that are allegedly false, and any alleged worthless services, and the name of any residents not already named in the indictment that the government intends to offer at trial. They also seek a bill of particulars which identifies the names of any coconspirators not named in the indictment, which private settlements in civil lawsuits the government intends to introduce, and evidence of any meetings attended by Wachter the government intends to introduce at trial.

"A bill of particulars serves to inform the defendant of the nature of the charge against him with sufficient precision to enable him to prepare for trial, to avoid or minimize the danger of surprise at trial, and to enable him to plead his acquittal or conviction in bar of another prosecution for the same offense when the indictment is too vague and indefinite." United States v. Hernandez, 299 F.3d 984, 989-90 (8th Cir. 2002). It is not a discovery tool, and should not be used to obtain detailed disclosure of the government's evidence. United States v. Wessels, 12 F.3d 746, 750 (8th Cir. 1993). The court has discretion to order the government to provide additional details when the indictment fails to sufficiently inform the defendant of the charges against him so as to hinder his ability to prepare a defense. United States v. Garrett, 797 F.2d 656, 665 (8th Cir. 1986).

As stated above, the indictment is legally sufficient on its face and provides the defendants with the constitutionally required notice of the charges against them. To require the government further to identify the specific false representations, to name all residents, civil lawsuits, and any meetings about which the government intends to introduce at trial, would be using the bill of particulars improperly as a discovery tool. Further, counsel for the government stated at the hearing that it has provided defendants with the names of all the residents about whom it intends to offer evidence, and will continue to supplement this information with newly discovered evidence.

This motion will be denied.

# IV. Motion to sever

Defendant Wachter has moved to sever himself from the other defendants for a separate trial (Doc. 46). The other defendants joined this motion. (Doc. 62.)

Federal Rule of Criminal Procedure 14 "allows the trial court to order severance even if joinder was proper under Rule 8(b)."[12] <u>United States v. Wadena</u>, 152 F.3d 831, 850 (8th Cir. 1998). "When a defendant moves for a severance, a district court must first determine whether joinder is proper under Federal Rule of Civil Procedure 8." <u>United States v. Darden</u>, 70 F.3d 1507, 1526 (8th Cir. 1995). Here, joinder of the defendants is proper under Rule 8(b). All defendants are charged in each of the counts. Thus, the facts and charges alleged against each defendant are factually interrelated with those alleged against all the other defendants. <u>See</u> <u>id.</u> at 1526-27 ("indictment in this case sufficiently alleged that the joined defendants and counts were factually interrelated").

Whether or not to sever is within the discretion of the trial judge. <u>Wadena</u>, 152 F.3d at 850. "In a ruling on a motion for severance, a court must weigh the inconvenience and expense of separate

---

[12]Federal Rule of Criminal Procedure 8(b) provides:

> (b) Joinder of Defendants. The indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses. The defendants may be charged in one or more counts together or separately. All defendants need not be charged in each count.

Fed. R. Crim. P. 8(b).

Federal Rule of Criminal Procedure 14(a) provides:

> (a) Relief. If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires.

Fed. R. Crim. P. 14(a).

trials against the prejudice resulting from a joint trial of co-defendants." <u>United States v. Pherigo</u>, 327 F.3d 690, 693 (8th Cir. 2003). Severance is only required when the evidence is such that a jury could not be expected to compartmentalize it as it relates to the separate defendants. <u>Id.</u> at 693. The prejudice against a defendant must be "severe or compelling." <u>Id.</u> The court must consider the complexity of the case, if one or more of the defendants was acquitted, and the availability of adequate instructions. <u>Id.</u>

> It is not an abuse of discretion to deny a severance motion when not every joined defendant has participated in every offense charged, <u>[United States v.] Delpit</u>, 94 F.3d [1134,] 1143-44 [(8th Cir. 1996)], when evidence which is admissible only against some defendants may be damaging to others, <u>id.</u>, or when there is varying strength in the evidence against each defendant.

<u>United States v. Lee</u>, 374 F.3d 637, 646 (8th Cir. 2004), <u>cert. denied</u>, 125 S.Ct. 2962 (2005). There is a strong presumption against severing properly joined defendants, especially in a conspiracy case. <u>United States v. Noe</u>, 411 F.3d 878, 886 (8th Cir. 2005).

Wachter argues that severance is necessary because certain evidence would be admissible against the other defendants and not him. This alone does not justify severance. <u>See Lee</u>, 374 F.3d at 646. Further, all the defendants are charged with conspiracy. "In general, persons charged in a conspiracy or jointly indicted on similar evidence from the same or related events should be tried together." <u>United States v. Ruiz</u>, 446 F.3d 762, 772 (8th Cir. 2006). The trial judge can assess the nature of the evidence actually introduced at trial, the efficacy of cautionary jury instructions to avoid undue prejudice to any defendant, and all the circumstances of the trial. Therefore, defendant's motion to sever is denied, but without prejudice to being refiled at trial upon a sufficient showing of prejudice from the joinder.

Whereupon,

**IT IS HEREBY ORDERED** that the motions of defendant Wachter to strike surplusage (Doc. 45), for a bill of particulars (Doc. 60), and to compel compliance with court order (Docs. 66 and 80) are denied.

**IT IS FURTHER ORDERED** that the motions of corporate defendants for leave to file additional motions (Doc. 52), to compel compliance with court order (Doc. 69), to quash government's subpoena (Doc. 72), and to strike (Doc. 81) are denied.

**IT IS FURTHER ORDERED** that the third motion of defendants American Healthcare Management, Claywest House Healthcare, Oak Forest north, and Lutheran Healthcare motion to join pleadings filed by Wachter (Doc. 95) is sustained.

**IT IS HEREBY RECOMMENDED** that the motion of defendant Wachter to dismiss the indictment (Doc. 48) be denied

**IT IS FURTHER RECOMMENDED** that the motion of defendant Wachter to sever defendant Wachter from the other defendants (Doc. 46) be denied.

The parties are advised they have until August 1, 2006,[13] to file written objections to this Order and Recommendation. The failure to file objections may result in a waiver of the right to appeal issues of fact.


_____
**DAVID D. NOCE**
**UNITED STATES MAGISTRATE JUDGE**


Signed on July 14, 2006.


_____

[13]This is 10 days from July 14, 2006. See 28 U.S.C. § 636(b); Fed. R. Crim. P. 45(a)(2).